UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| MARK EASTERDAY and<br>CHARISE EASTERDAY,<br><br>      Plaintiffs,<br><br>v.<br><br>ALEXIS ROBINSON and<br>KNOX COUNTY, TENNESSEE,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)   No.:   3:24-cv-380-TAV-JEM<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant Knox County's motion to dismiss [Doc. 7]. Plaintiff has responded [Doc. 9] and Knox County has replied [Doc. 10]. This matter is now ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, Knox County's motion to dismiss [Doc. 7] will be **GRANTED** and plaintiffs' claims against Knox County will be **DISMISSED**. The parties' joint motion to stay [Doc. 13] is therefore **DENIED as moot**.

### I.  Background

The complaint alleges that, in 2014, plaintiffs, a married couple, took Mr. Easterday's two grand-nieces, defendant Alexis Robinson, then age 11, and her younger sister, then age 8, into their home [Doc. 1 ¶¶ 8, 10]. The children were previously in the custody of their grandmother, Mr. Easterday's sister, but, after suffering a serious medical condition, she was no longer able to care for the children [*Id.* ¶ 12]. Plaintiffs allege that Robinson was a troubled child with behavior issues [*Id.* ¶¶ 13–14]. On several occasions Robinson expressed that she was unhappy with her living situation and wished to move

into the home of her friend, Bailey Odom, but the plaintiffs would not agree to this situation [*Id.* ¶ 16].

In August 2021, when she was 17 years old, Robinson told her school guidance counselor that Mr. Easterday had sexually assaulted her [*Id.* ¶ 18]. The guidance counselor informed law enforcement and the Department of Children's Services ("DCS") of these allegations [*Id.* ¶ 19]. On August 18, 2021, Knox County Sheriff's Office ("KCSO") and DCS officials arrived at plaintiffs' home, informed them of the allegations, and temporarily removed Robinson and her sister from the home, placing them in the home of Robinson's friend, Odom [*Id.* ¶ 20]. Robinson subsequently provided a forensic interview where she made allegations of multiple events involving Mr. Easterday [*Id.* ¶ 21].

The Knox County District Attorney's Office presented a seven-count indictment to the grand jury, including charges involving the allegations that Mr. Easterday had inappropriately touched Robinson [*Id.* ¶ 25]. On December 15, 2021, the grand jury returned a "true bill" on the indictment [*Id.* ¶ 26]. On December 23, 2021, Mr. Easterday was arrested at his long-time place of employment, "costing him his career and humiliating him in front of his co-workers, friends, and peers" [*Id.* ¶ 27]. Further, due to the timing of his arrest, which plaintiffs allege was "based upon false information," Mr. Easterday was unable to be with his family over the Christmas holiday [*Id.* ¶ 28].

Mr. Easterday's criminal charges were being pursued by the Knox County District Attorney's Office ("KCDAO") Child Abuse Unit's team leader Ashley McDermott and her associate, J. Franklin Ammons [*Id.* ¶ 32]. In mid-July 2023, Mr. Easterday was asked

2

to consent to an amendment to the indictment, altering the allegation that he touched Robinson's breast to an allegation that he touched Robinson's buttocks [*Id.* ¶ 34]. Mr. Easterday declined, and McDermott and Ammons informed his defense counsel that they would be seeking a new indictment adding a count of touching the buttocks and an additional allegation of rape [*Id.* ¶ 35]. However, this new presentment was returned as a "no true bill" by the grand jury [*Id.* ¶ 38]. Plaintiffs allege that Mr. Easterday was only informed that there was "no bill" for the rape allegation but not provided the "no true bill" from the grand jury "showing no probable cause" to proceed on any of the allegations [*Id.* ¶ 39]. Soon after, Mr. Easterday was presented with a diversionary plea offer, which he refused [*Id.* ¶ 40]. Ammons then filed a Motion to Amend the Presentment on August 17, 2023, to substitute the allegation for touching Robinson's breast with an allegation of touching Robinson's buttocks, even though the grand jury had filed a "no true bill" on the same subject matter [*Id.* ¶ 41]. The motion was granted "ostensibly without the Court's knowledge of the no true bill" [*Id.*].

Mr. Easterday and his counsel continued to prepare for the September 11, 2023, trial without any knowledge of the grand jury's determination of probable cause [*Id.* ¶ 42]. The day before the trial, Mr. Easterday's defense counsel received a phone call from Ammons informing him, for the first time, of the "no true bill" on all charges [*Id.* ¶ 43]. Mr. Easterday and his counsel then prepared to argue a motion to dismiss based on the grand jury's findings [*Id.* ¶ 44]. According to plaintiffs, the "trail [sic] court erroneously overruled the motion to dismiss; denied Mr. Easterdays . . . request for an interlocutory

3

appeal, and ordered the trial to proceed despite the [grand jury's] finding of no probable cause," although the judge *sua sponte* amended the indictment back to the original allegations [*Id.* ¶ 45]. After a four-day trial, the jury returned a verdict of not guilty on all charges [*Id.* ¶ 46]. Nonetheless, the DCS action was still pending regarding the custody of Robinson's minor sister [*Id.* ¶ 47]. This matter did not conclude until June 13, 2024, when it was determined that Robinson's younger sister would remain in the care of others [*Id.*].

Plaintiffs now bring this action, alleging a claim of abuse of process against Robinson and claims of Fifth and Fourteenth Amendment due process violations, under 42 U.S.C. § 1983, against Knox County [*Id.* ¶¶ 48–53].

## II. Standard of Review

Knox County has brought its motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts

4

"merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to plaintiffs [(or the pleading party, as the case may be)], accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). However, the Court need not accept legal conclusions or unwarranted factual inferences as true. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

### III. Analysis

Knox County argues that the acts and/or omissions of the KCDAO and its assistant district attorneys cannot be imputed to the county [Doc. 8, p. 3]. Knox County argues that the KCDAO is an office of the State, created by the Tennessee Constitution [*Id.*]. While Knox County is the venue of the 6th Judicial District, it is well settled that the Office of the District Attorney General is a state entity [*Id.*]. Thus, assistant district attorneys are state, not county, employees [*Id.*]. Plaintiffs' allegations of misconduct by McDermott and

5

Ammons involve these defendants acting as arms of the State, not the county [*Id.* at 4]. The complaint makes no allegations that Knox County controlled or directed their conduct, nor any other allegations against the county, and thus, the case should be dismissed as to Knox County [*Id.*].

Plaintiffs respond that the KCDAO is, at minimum, a "defacto [sic] political sub-division of Knox County government" [Doc. 9, p. 3]. Plaintiffs contend that Knox County's argument overlooks the fact that the actions of the assistant district attorneys, while prosecuting state criminal charges, occurred exclusively in Knox County, that the District Attorney General is elected by the voters of Knox County, the KCDAO prosecutes violations of Knox County ordinances, and a significant portion of the funding for the KCDAO is directly provided by the taxpayers of Knox County [*Id.* at 3–4]. Plaintiffs state that, while they do not dispute that the Attorney General is a state office, they contend that an assistant district attorney in Tennessee, especially one assigned to a specialized unit like child abuse, "operates as both a county and state employee, reflecting the collaborative nature of their duties and compensation sources" [*Id.* at 4]. Plaintiffs cite *Pharr v. Pension Bd., Memphis Light, Gas & Water Division, City of Memphis*, 305 S.W.2d 254 (Tenn. Ct. App. Oct. 26, 1956) in support of their position [*Id.*].

Knox County replies that *Pharr* is highly distinguishable [Doc. 10, p. 1]. Moreover, the Sixth Circuit has held that state prosecutors act as arms of the state, not the municipality, when prosecuting state criminal charges, meaning that their actions in prosecuting the charge may not be attributed to the municipality [*Id.* at 1–2 (citing *D'Ambrosio v. Marino*,

6

747 F.3d 378 (6th Cir. 2014))]. Knox County argues that, because the prosecution here was for state criminal charges, the acts and/or omissions of the assistant district attorneys cannot be attributed to Knox County [*Id.* at 2].

In general, a plaintiff may not obtain relief from a municipality under § 1983 "on a *respondeat superior* theory—in other words, 'solely because it employs a tortfeasor.'" *D'Ambrosio*, 747 F.3d at 388–89 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Rather, "a municipality is liable under § 1983 only where, 'through its deliberate conduct,' it was 'the "moving force" behind the injury alleged.'" *Id.* (citation omitted). That is, a municipality may be liable only if the plaintiff identifies an "illegal policy or custom" that caused a violation of the plaintiff's constitutional rights. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Addressing a similar situation to this case, the Western District of Tennessee set forth the general principles regarding Tennessee assistant district attorneys as follows:

> The Office of the District Attorney General is a state entity. *See* Tenn. Code Ann. § 8-7-101, *et seq.*; *see also Williams v. Stowe*, No. 15-1186-JDT-egb, 2016 WL 11478279, at *2 (W.D. Tenn. Sept. 28, 2016), report and recommendation adopted at 2016 WL 6330576 (W.D. Tenn. Oct. 28, 2016). Assistant district attorneys in Tennessee are responsible for enforcing criminal laws on behalf of the state and are compensated, at least in part, by the state. *See* Tenn. Code Ann. § 103; Tenn. Code Ann. § 8-7-201. Assistant district attorneys are therefore state, not county, employees. *See* Tenn. Code Ann. § 8-42-101(3)(A); *Burnes v. Smith*, No. 3:18-cv-00608, 2018 WL 3472821, at *3 (M.D. Tenn. July 17, 2018) (noting that if named defendant was "an attorney employed by the State of Tennessee as an assistant district attorney general" prosecutorial immunity would apply in § 1983 suit); *Williams*, 2016 WL 11478279, at *2 (noting assistant district attorney is state employee); *Milstead v. Bedford C[n]ty. Sheriff's Dep't*, No. 4:12–CV–52, 2014 WL 420395, at *6 (E.D. Tenn. Feb. 4, 2014) ("Defendants Assistant District Attorneys ... are state employees."); *see also Cherry*, 45 F. Supp. 3d

7

at 877-89; *cf. Cady v. Arenac County*, 574 F.3d 334, 343 (6th Cir. 2009) (describing Michigan's statutory scheme and holding that county prosecuting attorneys there are state agents for § 1983 purposes).

*Malone v. Shelby Cnty.*, No. 18-cv-2201, 2019 WL 847747, at *2 (W.D. Tenn. Feb. 4, 2019), report and recommendation adopted at 2019 WL 847474 (W.D. Tenn. Feb. 21, 2019). Similar to this case, in *Malone*, Shelby County argued that the plaintiffs could not proceed on their claim for negligent failure to train the assistant district attorney defendants against the county because those individuals were employed by the State of Tennessee, not Shelby County. *Id.* Plaintiffs responded that the assistant district attorneys were paid out of both the state and county budgets, and therefore, were employed by both the state and the county. *Id.* But the court found that the assistant district attorney defendants were employed by the State and "received at least part of their compensation directly from the State of Tennessee[,] and were mandated by law to prosecute crimes on behalf of the State of Tennessee." *Id.* at *3. Moreover, there was "no indication that Shelby County controlled or directed their conduct." *Id.* Thus, the Western District of Tennessee granted judgment as a matter of law in favor of Shelby County. *Id.*

As noted previously, plaintiffs here rely on the Tennessee Court of Appeals's decision in *Pharr* to support their argument that they have stated a claim against Knox County [Doc. 9, p. 4]. In *Pharr*, the Tennessee Court of Appeals was presented with the question of whether the plaintiff was entitled to credit toward his retirement for service as an assistant district attorney in the 15th Judicial District, which comprised of Shelby County, Tennessee. 305 S.W.2d at 254. Specifically, plaintiff had over 10 years of service

8

to Shelby County at the Memphis Light, Gas & Water Division and Memphis and Shelby County Public Utilities Research Department, respectively. *Id.* at 255. But plaintiff needed a total of 15 years' creditable service for service retirement allowances. *Id.* Of particular relevance to this case, the Tennessee Court of Appeals concluded that while plaintiff was serving an assistant district attorney general, he was serving as an employee of Shelby County. *Id.* at 259. The Court stated that plaintiff "was being paid by and rendering service to Shelby County. The fact that he was also an employee of the State of Tennessee and receiving compensation from the State of Tennessee did not make him any the less also an employee of Shelby County." *Id.* But, in reaching that conclusion, the Court relied on a prior opinion, which stated:

> [W]hile decisions of this court are to the effect that a justice of the peace, in the exercise of strictly judicial functions, is a state officer, it is plain from our statutes, as well as from adopted English statutes, that, in the exercise of other functions, the justice of the peace is strictly a county office. In the exercise of still other functions, he is primarily a county officer, and the same must be said of these newly created functionaries who succeed to the jurisdiction and authority of justices of the peace in criminal cases, suits, and actions.

*Id.* (quoting *Hancock v. Davidson Cnty.*, 104 S.W.2d 826 (Tenn. 1937)). Thus, it appears that the Tennessee Court of Appeals' decision rested on the fact that a Tennessee assistant district attorney performs the duties of both a state officer and a county officer in different facets of the job.

However, the Sixth Circuit, addressing this issue with respect to Ohio prosecutors, has specifically held that "Ohio prosecutors act as arms of the state—not of a municipality—when prosecuting state criminal charges." *D'Ambrosio*, 747 F.3d at 386

9

(citing *Pusey v. City of Youngstown*, 11 F.3d 652, 659 (6th Cir. 1993)).  The same logic would appear to apply here, and be consistent with *Pharr*.  While prosecuting a criminal defendant for violations of state law, a Tennessee assistant district attorney acts as a state official.  The Court need not determine in what circumstances a Tennessee assistant district attorney might be deemed a county official, because, in this case, the assistant district attorneys were prosecuting Mr. Easterday for an alleged violation of state law, and therefore, they were acting as state officials, not county officials.  And, for purposes of *Monell*, "state prosecutors' actions in prosecuting state crimes cannot themselves establish municipal policy."  *Id*. at 387.  Accordingly, plaintiffs have not stated a claim for which relief can be granted against Knox County.

## IV. Conclusion

For all these reasons, Knox County's motion to dismiss [Doc. 7] is **GRANTED** and plaintiffs' claims against Knox County are **DISMISSED**.  The parties' joint motion to stay [Doc. 13] is therefore **DENIED as moot**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE